# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MARTIN CHAVEZ, | No. CV 11-1351-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff filed this action on February 16, 2011, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 8, 2011, and March 22, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 28, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 8, 1963. [Administrative Record ("AR") at 73-74.]  He has a second grade education [AR at 187], and past relevant work experience as a dish washer, maintenance worker, materials carrier, and sandblaster.  [AR at 183.]

Plaintiff filed his application for Disability Insurance Benefits on September 18, 2008,[1] and protectively filed his application for Supplemental Security Income payments on September 23, 2008, alleging that he has been unable to work since July 19, 2006, due to a right shoulder rotator cuff tear, sleep disorder, and problems with his cervical spine.  [AR at 73-74, 139, 146, 181-88.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 79-92.]  A hearing was held on May 19, 2010, at which time plaintiff appeared without counsel and testified on his own behalf.  [AR at 30-63.] A vocational expert also testified.  [AR at 60-63.]  On June 17, 2010, the ALJ determined that plaintiff was not disabled.  [AR at 14-24.]  On December 13, 2010, the Appeals Council denied plaintiff's request for review.  [AR at 1-7.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1]   While plaintiff's application for Disability Insurance Benefits ("DIB") is dated September 23, 2008 [see AR at 146], plaintiff's DIB Disability Determination and Transmittal states that September 18, 2008, was his filing date [see AR at 73], and the ALJ also cites September 18, 2008, as plaintiff's DIB filing date.  [See AR at 14.]

1  adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

2  1257.  When determining whether substantial evidence exists to support the Commissioner's

3  decision, the Court examines the administrative record as a whole, considering adverse as well

4  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

5  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

6  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

7  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

8

9                                                    **IV.**

10                              **THE EVALUATION OF DISABILITY**

11         Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

12  to engage in any substantial gainful activity owing to a physical or mental impairment that is

13  expected to result in death or which has lasted or is expected to last for a continuous period of at

14  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

15

16  **A.     THE FIVE-STEP EVALUATION PROCESS**

17         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

18  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

19  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

20  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

21  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

22  substantial gainful activity, the second step requires the Commissioner to determine whether the

23  claimant has a "severe" impairment or combination of impairments significantly limiting his ability

24  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

25  If the claimant has a "severe" impairment or combination of impairments, the third step requires

26  the Commissioner to determine whether the impairment or combination of impairments meets or

27  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

28  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

3

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, July 19, 2006. [AR at 16.][2] At step two, the ALJ concluded that plaintiff has the severe impairments of mild right shoulder impingement syndrome, mild cervical degenerative disc disease, and cervical spine multilevel disc bulges. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 17.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] except that plaintiff should "avoid overhead reaching with the right upper extremity." [AR at 18.] At step four, the ALJ concluded that plaintiff was not capable of performing his past

[2]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2011. [AR at 16.]

[3]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4]   20 C.F.R. §§ 404.1567(b), 416.967(b) define "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

4

1  relevant work. [AR at 22.] At step five, the ALJ found, based on the vocational expert's testimony

2  and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in

3  significant numbers in the national economy that [plaintiff] can perform." [AR at 23.] Accordingly,

4  the ALJ determined that plaintiff is not disabled. [Id.]

5

6                                              **V.**

7                                    **THE ALJ'S DECISION**

8         Plaintiff contends that the ALJ failed to properly consider the opinions of Dr. Edward G.

9  Stokes, plaintiff's treating physician, contained in two reports dated March 26, 2009, as to: (1)

10  plaintiff's work restrictions, and (2) the ultimate issue of whether plaintiff is disabled. [Joint

11  Stipulation ("JS") at 4-12.] As set forth below, the Court respectfully disagrees with plaintiff and

12  affirms the ALJ's decision.

13

14  **A.     TREATING PHYSICIAN OPINION ON PLAINTIFF'S WORK RESTRICTIONS**

15         In evaluating medical opinions, the case law and regulations distinguish among three types

16  of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but

17  do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the

18  claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at

19  830. Generally, the opinions of treating physicians are given greater weight than those of other

20  physicians, because treating physicians are employed to cure and therefore have a greater

21  opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007);

22  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

23         "However, an ALJ need not give controlling weight to the opinion of a treating physician."

24  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "The treating

25  physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability."

26  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). "The ALJ may

27  disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359

28  F.3d at 1195 (quoting Magallanes, 881 F.2d at 751). Where a treating physician's opinion does

1   not contradict other medical evidence, the ALJ must provide clear and convincing reasons to

2   discount it.  See Lester, 81 F.3d at 830; Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)

3   ("The administrative law judge is not bound by the uncontroverted opinions of the claimant's

4   physicians on the ultimate issue of disability, but he cannot reject them without presenting clear

5   and convincing reasons for doing so.") (internal citation and quotations omitted).  Where a treating

6   physician's opinion conflicts with other medical evidence, the ALJ must set forth specific and

7   legitimate reasons supported by substantial evidence in the record to reject it.  See Lester, 81 F.3d

8   at 830; see also McAllister v. Sullivan, 888 F.2d 599, 602-03 (9th Cir. 1989) (remand warranted

9   where ALJ failed to give adequately specific and legitimate reasons for disregarding treating

10  physician's testimony that the claimant was disabled due to personality disorder).  The ALJ can

11  meet the requisite specific and legitimate standard "by setting out a detailed and thorough

12  summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

13  making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  The ALJ "must set forth

14  his own interpretations and explain why they, rather than the [treating] doctors', are correct."  Id.

15        The record shows that Dr. Edward G. Stokes, an orthopedic surgeon [see AR at 582], saw

16  plaintiff, on average, on a monthly basis between July 2007 and February 2009.  [See AR at 318-

17  70, 431-46.]  On July 30, 2007, Dr. Stokes performed an initial evaluation on plaintiff and referred

18  him for an MRI of his right shoulder.  [AR at 363-70.]  The MRI was performed on August 7, 2007,

19  and on August 30, 2007, Dr. Stokes found that the "MRI scan of the right shoulder ... revealed mild

20  impingement present," and diagnosed plaintiff with right shoulder impingement syndrome and

21  sleep disorder.  [AR at 358-62.]  On October 15, 2007, Dr. Stokes referred plaintiff for an MRI of

22  his cervical spine, which was performed on October 26, 2007.  [See AR at 349-54.]  Upon

23  plaintiff's next examination, on November 8, 2007, Dr. Stokes diagnosed plaintiff with "[m]ultiple

24  cervical disc bulges" and "[m]yofascial sprain, cervical spine with multilevel disc bulges."  [AR at

25  348.]  Thereafter, Dr. Stokes consistently diagnosed plaintiff with "right shoulder impingement

26  syndrome, mild," "multiple cervical disc bulges," "myofascial sprain, cervical spine with multilevel

27  disc bulges," and "sleep disorder."  [See AR at 318-25, 327-30, 332-40, 345, 431-33, 435-46.]

28

On March 26, 2009, Dr. Stokes examined plaintiff again and completed a Primary Treating Physician's Maximum Medical Improvement Report ("MMI Report"). [See AR at 574-82.] He diagnosed plaintiff with "[m]ild impingement syndrome of the right shoulder," "[m]yofascial sprain/strain of the cervical spine with 2 mm disc bulges at C3-C4 and C4-C5, and 2-3 mm disc bulge at C5-C6," and "[s]leep disorder." [AR at 579.] Dr. Stokes opined that plaintiff "has received maximum medical improvement with regard to his right shoulder injury," and that his "permanent disability is directly and totally the result of his work[-]related injury occurring on July 19, 2006 and from July 20, 2006 to August 16, 2006." [AR at 580.] He also opined that, among other things, plaintiff "is limited from repetitive pushing and pulling with the right upper extremity," "is able to perform climbing, balancing, stooping, kneeling, crouching, crawling, reaching and twisting on an occasional basis," and "may perform handling, fingering, feeling, seeing, hearing and speaking on a frequent basis." [AR at 581.] Dr. Stokes also completed a Primary Treating Physician's Supplemental Report ("Supplemental Report") on March 26, 2009, in which he concluded that plaintiff "has reached a Permanent and Stationary plateau with the following [objective] factors of disability": "loss of range of motion" in the cervical spine and right shoulder ("abnormalities noted on MRI scan[s]" of the cervical spine and right shoulder), "loss of sensation in the right index and middle fingers," and "loss of grip strength" in his right hand. [See AR at 583-86.] Dr. Stokes further concluded that plaintiff has the following work restrictions: "[his] cervical spine requires a disability precluding repetitive motions of the neck or spine," which "contemplates [that plaintiff] has lost approximately 50% of preinjury capacity for flexing, extending, bending and rotating the neck or spine"; and "[his] right upper extremity requires a disability precluding forceful activities," which "contemplates [that plaintiff] has lost approximately 50% of preinjury capacity for lifting, pushing, pulling, grasping, pinching, holding, torquing, and performing other activities of comparable physical effort." [AR at 584.] Dr. Stokes further opined that the "[f]ailure to abide by these work restrictions will likely result in further injury to the cervical spine and right shoulder, further exacerbation of the condition, and further disability." [Id.]

In the decision, the ALJ summarized Dr. Stokes' treatment records for plaintiff, noting that Dr. Stokes treated plaintiff regularly for "a sleep disorder, mild right shoulder impingement

syndrome, myofascial strain of the cervical spine and cervical spine multilevel disc bulges." [AR at 19.] The ALJ also made note of the MRIs performed on plaintiff's right shoulder and cervical spine, and their results, as well as other reports by Dr. Stokes in the record. [See id.] The ALJ stated that the March 26, 2009, reports "indicated [plaintiff] could perform a modified range of light work," and that the RFC determination was supported by "the medical opinions of Dr. Stokes in March 2009." [AR at 19, 22.] Otherwise, the ALJ did not discuss any of Dr. Stokes' specific findings as to plaintiff's work restrictions contained in the March 26, 2009, reports. [See AR at 18-22.]

The ALJ's consideration of Dr. Stokes' March 26, 2009, opinions regarding plaintiff's work restrictions was inadequate. While the ALJ stated that the RFC determination was supported by Dr. Stokes' opinions in the March 26, 2009, reports, the ALJ excluded Dr. Stokes' specific findings in those reports -- such as a loss of "approximately 50% of preinjury capacity for flexing, extending, bending and rotating the neck or spine" and a loss of "approximately 50% of preinjury capacity for lifting, pushing, pulling, grasping, pinching, holding, torquing, and performing other activities of comparable physical effort" -- from the RFC determination. Thus, it appears that the ALJ implicitly rejected those findings without providing any reason for doing so, which was error. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (the ALJ is required to provide an explicit explanation, supported by evidence in the record, of the weight given to a treating physician's medical opinions); see also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (in disregarding the findings of a treating physician, the ALJ must "provide detailed, reasoned and legitimate rationales" and must relate any "objective factors" he identifies to "the specific medical opinions and findings he rejects").

Defendant contends, however, that any error by the ALJ in failing to discuss Dr. Stokes' specific findings was harmless. [JS at 18-20.] An error is harmless where it is "inconsequential to the ultimate nondisability determination." Robbins v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 728 (9th Cir. 2011) (quoting Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)). By contrast, an error is not harmless where "there is a reasonable possibility that [the new evidence] would have changed the outcome of the present case." See Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1381 (9th Cir. 1984). "[T]he burden is on the party

1   attacking the agency's determination to show that prejudice resulted from the error." McLeod v.

2   Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (citing Shinseki v. Sanders, 556 U.S. 396, 409, 129

3   S.Ct. 1696, 173 L.Ed.2d 532 (2009)). "Where harmfulness of the error is not apparent from the

4   circumstances, the party seeking reversal must explain how the error caused harm." McLeod, 640

5   F.3d at 887. Nevertheless, the reviewing court can remand where the circumstances of the case

6   show a substantial likelihood of prejudice from the error -- "[m]ere probability is not enough." Id.

7   at 888.

8          Here, other than pointing out the discrepancies between Dr. Stokes' opinions and the ALJ's

9   RFC determination for plaintiff, plaintiff does not attempt to show how the ALJ's error resulted in

10  prejudice. [See JS at 11.] Nevertheless, the Court reviews the circumstances of the case to

11  determine whether there is a substantial likelihood of prejudice. See McLeod, 640 F.3d at 888.

12         At step five, the ALJ found, based on the vocational expert's testimony and application of

13  the Medical-Vocational Guidelines, that plaintiff can perform the job of battery inspector, Dictionary

14  of Occupational Titles ("DOT") No. 727.687-062. [AR at 23.] At the hearing on May 19, 2010, the

15  vocational expert ("VE") testified that a hypothetical person with all of the limitations the ALJ found

16  plaintiff has, and without use of the right upper extremity, can perform the job of battery inspector.

17  [See AR at 18, 61-62.] Thus, despite the ALJ's error in implicitly rejecting Dr. Stokes' March 26,

18  2009, opinions regarding plaintiff's right upper extremity work restrictions, that error was

19  inconsequential to the ultimate disability determination.[5]

20         Moreover, the circumstances of the instant case do not raise a substantial likelihood that

21  plaintiff was prejudiced by the ALJ's failure to account for Dr. Stokes' opinions regarding plaintiff's

22  alleged limitations other than those related to his right upper extremity. First, while Dr. Stokes

23  opined that plaintiff "has lost approximately 50% of [his] preinjury capacity for flexing, extending,

24

_____

25        [5]   While Dr. Stokes opined that plaintiff is only able to perform reaching "on an occasional
    basis" [AR at 581], the job of battery inspector requires reaching "frequently," i.e., one-third to two-
26  thirds of the time. [DOT No. 727.687-062.] Nevertheless, Dr. Stokes identified problems and
    limitations only as to plaintiff's right upper extremity, and the VE testified that an individual who is
27  precluded from using his right upper extremity can perform the job of battery inspector. [See AR
    at 62, 577-79, 584.] Moreover, the VE testified that his testimony was in conformance with the
28  DOT [see AR at 63], and plaintiff does not dispute this.

1    bending and rotating the neck or spine" and should be precluded from "repetitive motions of the

2    neck or spine" [AR at 584], the DOT's description of the job of battery inspector gives no indication

3    that the job requires repetitive motions of, or any significant flexing, extending, bending, or rotating

4    of, the neck or spine.  See DOT No. 727.687-062; see also Pinto v. Massanari, 249 F.3d 840, 845-

5    46 (9th Cir. 2001) ("the best source for how a job is generally performed is usually the Dictionary

6    of Occupational Titles") (internal citation omitted); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th

7    Cir. 1995) (the DOT raises a presumption as to job classification requirements).  Instead, the DOT

8    reflects that the job does not require any climbing, balancing, stooping, kneeling, crouching, or

9    crawling, each of which would involve some neck and spine movement.  DOT No. 727.687-062.

10   Similarly, while Dr. Stokes consistently diagnosed plaintiff with sleep disorder,[6] Dr. Marc

11   Nehorayan, a psychiatrist to whom plaintiff was referred by Dr. Stokes [see AR at 313, 369],

12   completed a comprehensive psychiatric report for plaintiff on October 24, 2007, in which he stated

13   that plaintiff "did not identify experiencing any daytime somnolence" and "identified being alert

14   during the course of the day without any indications of either falling asleep or anything out of the

15   ordinary in regard to his routine."  [AR at 309.]  In the report, Dr. Nehorayan opined, "[i]t appears

16   that [plaintiff's] general medical condition is the primary cause associated with the sleep deficits

17   that he continues to endure," and Dr. Stokes adopted this opinion in his March 26, 2009, MMI

18   Report.  [See AR at 314, 575.]  Moreover, while plaintiff testified at the hearing that he has

19   difficulty sleeping [AR at 50], he did not mention lack of sleep when the ALJ asked what keeps him

20   from working [see AR at 44], and he also did not allege that he has problems staying awake during

21   the day.  [See AR at 37-59.]  Thus, despite Dr. Stokes' consistent diagnosis, neither plaintiff nor

22   his physicians assert that plaintiff has any work limitations based on his alleged sleep disorder.

23   Based on the foregoing, there is not more than a "mere probability" that the ALJ's implicit rejection

24   of Dr. Stokes' diagnosis of sleep disorder and opinions regarding plaintiff's neck and spine

25   limitations resulted in prejudice to plaintiff.

26

27   _____

28   [6]    "Sleep disorder" is not among the severe impairments that the ALJ found that plaintiff has.
     [See AR at 16.]  Plaintiff does not raise this issue in the Joint Stipulation.  [See JS at 4-12, 20-21.]

1    The ALJ's error in failing to discuss Dr. Stokes' specific findings was harmless.  Thus,

2    remand is not warranted on this issue.  See McLeod, 640 F.3d at 888; Robbins, 648 F.3d at 728.

3

4    **B.    TREATING PHYSICIAN OPINION ON DISABILITY**

5    Plaintiff also contends that the ALJ failed to properly consider Dr. Stokes' opinions in the

6    March 26, 2009, reports as to the ultimate issue of whether plaintiff is disabled.[7]  [JS at 10-11.]

7    On January 16, 2009, plaintiff saw Dr. Payam Moazzaz, an orthopaedic surgeon, for an

8    orthopaedic consultation, which included both an orthopaedic examination and a neurovascular

9    examination.  [AR at 392-97.]  Dr. Moazzaz made the following findings as to plaintiff's neck: "No

10   scars.  Normal lordosis.  No scoliosis.  There is tenderness to palpation in the paraspinal

11   musculature, bilaterally.  No muscle spasm appreciated.  Full pain-free range of motion.  Spurling

12   and Hoffman tests negative bilaterally."  [AR at 394.]  Dr. Moazzaz diagnosed plaintiff, in relevant

13   part, with mild degenerative disc disease of the cervical spine and concluded that while plaintiff

14   "presents with severe neck pain ... [his own] exam [was] inconsistent with [plaintiff's] previous

15   studies.  His reports of severe pain and abnormal neurologic sensations are inconsistent with his

16   objective findings."  [AR at 396.]  Dr. Moazzaz opined, in relevant part, that plaintiff "can lift and

17   carry 50 pounds occasionally and 25 pounds frequently," i.e., that he can perform medium work,[8]

18   that he can climb, stoop, kneel, and crouch frequently, that "[t]here are no restrictions with

19   overhead activity," and that he "does not require the use of any assistive device."  [AR at 396-97.]

20   In the decision, the ALJ gave "minimal weight" to "Dr. Stokes['] medical opinions regarding

21   [plaintiff] being totally disabled on a temporary basis since July 2006" for the following reasons:

22

23   [7]    As the Court determined supra that any error by the ALJ in rejecting Dr. Stokes' opinions

24   regarding plaintiff's right upper extremity *work restrictions* was harmless, any error by the ALJ in failing to consider Dr. Stokes' opinion on the ultimate issue of whether plaintiff is *disabled* due to

25   his right upper extremity would also be harmless.  Thus, the Court need not address the issue of whether the ALJ erred by rejecting Dr. Stokes' opinion on whether plaintiff is disabled due to his

26   right upper extremity limitations.

27   [8]    20 C.F.R. §§ 404.1567(c), 416.967(c) define "medium work" as work that involves "lifting no

28   more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

(1) Dr. Stokes' "examinations and the results of diagnostic testing did not support, for Social Security purposes, [that plaintiff] was unable to work"; (2) Dr. Stokes "did not have [plaintiff] evaluated for possible ... neck surgery"; (3) Dr. Stokes' opinions "were inconsistent with the [state agency] determinations and the orthopedic [consultative examiner] medical opinions"; and (4) "disability determination[s] made for other agencies are not binding on the undersigned." [AR at 22.]

The ALJ's first and second reasons for rejecting Dr. Stokes' opinion regarding plaintiff's neck impairment were improper.  The ALJ did not state how Dr. Stokes' examinations of plaintiff and the diagnostic tests contradicted Dr. Stokes' opinion that plaintiff is disabled by virtue of his cervical spine [see AR at 584], and thus the first reason does not reach the level of specificity required to reject the opinion of a treating physician.  See Embrey, 849 F.2d at 421-23; Reddick, 157 F.3d at 725.  Moreover, as to the second reason, a treating physician's recommendations for conservative treatment instead of surgery do not constitute substantial evidence that a claimant is not disabled.  See Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000); but see Thomas v. Astrue, 2011 WL 4402958, at *6 (E.D. Pa. Sept. 22, 2011) (that treating physician had not recommended surgery constituted substantial evidence to support the ALJ's decision not to afford "controlling or much weight" to treating physician's opinion that claimant was disabled).

Nevertheless, the ALJ's third and fourth reasons for assigning minimal weight to Dr. Stokes' opinion were proper.  As to the third reason, where an examining physician gives an opinion that differs from that of a treating physician, but is based on independent clinical findings, the examining physician's opinion may constitute substantial evidence and "it is then solely the province of the ALJ to resolve the conflict."  See Andrews, 53 F.3d at 1041.  Here, Dr. Moazzaz performed an orthopaedic examination and a neurological examination on plaintiff, found that plaintiff has "[f]ull pain-free range of motion" in his neck, and concluded that plaintiff can perform medium work.  By contrast, Dr. Stokes found that plaintiff has a loss of range of motion in his cervical spine, and opined that plaintiff's "cervical spine requires a disability precluding repetitive motions of the neck or spine," which "contemplates [that plaintiff has] lost approximately 50% of preinjury capacity for flexing, extending, bending and rotating the neck or spine."  As there was

1   a conflict between Dr. Moazzaz's and Dr. Stokes' medical findings as to plaintiff's neck and spine,

2   the ALJ's resolution of the conflict in favor of Dr. Moazzaz's conclusion that plaintiff can perform

3   medium work is supported by substantial evidence.  See Allen v. Heckler, 749 F.2d 577, 579 (9th

4   Cir. 1984) (where consultative examiner's medical findings and conclusion on ultimate issue of

5   disability differed from those of treating physician, "there was a conflict in the medical reports and

6   testimony," and thus ALJ's resolution of the conflict in favor of consultative examiner's conclusion

7   on disability was supported by substantial evidence).[9]

8        Lastly, the ALJ correctly stated that disability determinations made for other agencies are

9   not binding on the Commissioner.  The determination of a claimant's ultimate disability is reserved

10  to the Commissioner.  See 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the

11  determination or decision about whether you meet the statutory definition of disability."); see also

12  20 C.F.R. § 416.904 ("A decision by any nongovernmental agency or any other governmental

13  agency about whether you are disabled or blind is based on its rules and is not our decision about

14  whether you are disabled or blind. We must make a disability or blindness determination based

15  on social security law.  Therefore, a determination made by another agency that you are disabled

16  or blind is not binding on us.").  Moreover, "[a]lthough a treating physician's opinion is generally

17  afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the

18  existence of an impairment or the ultimate determination of disability."  Ukolov v. Barnhart, 420

19  F.3d 1002, 1004 (9th Cir. 2005) (internal quotations and citations omitted).  Dr. Stokes' March 26,

20  2009, MMI Report and Supplemental Report appear to have been made for workers'

21  compensation purposes. [See AR at 574, 583.] Thus, the ALJ properly cited this reason to assign

22

23  _____

24      [9]   On February 4, 2009, and February 11, 2009, two different non-examining state agency
    physicians found that plaintiff can perform medium work.  [See AR at 407-11, 428-29.] While the
25  "report of a non-examining, non-treating physician ... is not substantial evidence when contradicted
    by all other evidence in the record," it may constitute substantial evidence where it is consistent
26  with other evidence.  See Magallanes, 881 F.2d at 752 (internal citations omitted).  As the state
    agency physicians' conclusions regarding plaintiff's ability to work are consistent with Dr.
27  Moazzaz's conclusion that plaintiff can perform medium work, the state agency physicians'
    determinations also constituted a specific and legitimate reason to reject Dr. Stokes' opinion on
28  the issue of whether plaintiff is disabled due to impairments of his neck and spine.

minimal weight to Dr. Stokes' opinion, as contained in those reports, on the ultimate issue of plaintiff's disability.

The ALJ gave specific and legitimate reasons supported by substantial evidence to reject Dr. Stokes' opinion that plaintiff is disabled due to his complaints of neck and spine problems. Therefore, the Court must affirm.  See Moncada, 60 F.3d at 523 ("We must affirm if we determine that substantial evidence supports the findings of the [ALJ] and that the ALJ applied the correct legal standards.").

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  February 9, 2012

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

14